IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

BRANCH BANKING AND TRUST COMPANY,

Plaintiff,

v.                                        CIVIL ACTION NO.   5:14-cv-25740

THE TRACTOR COMPANY, INC., et al.,

Defendants.

MEMORANDUM OPINION AND ORDER

The Court has reviewed the *Plaintiff Branch Banking and Trust Company's Motion to Dismiss Defendants' Counterclaim* (Document 14) and the *Memorandum of Law in Support* (Document 15), the Defendants' *Response to Branch Banking and Trust Company's Motion to Dismiss Counterclaim* (Document 25), the *Memorandum of Law in Opposition to Branch Banking and Trust Company's Motion to Dismiss Counterclaim* (Document 26), and the *Plaintiff Branch Banking and Trust Company's Reply in Support of Motion to Dismiss Defendants' Counterclaim* (Document 27).   The Court has also reviewed all of the exhibits and attachments submitted with the parties' respective pleadings.   After careful consideration of the complaint and the parties' written submissions, the Court finds that the Plaintiff's motion should be granted.

I.      FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This matter revolves around a series of loans extended by the Plaintiff to the Defendants.[1]

"Each of the loans is represented by a promissory note (the "Notes"), executed by [The Tractor

---

1       The Notes at issue here are Notes 15, 26, 27, 28, 29, 30 and 31.   (*See Verified Complaint*, Document 1 at 2-20.)

Company], containing identical terms." (Document 15 at 2.) (internal footnotes omitted.) The terms of each Note specify that "the failure to pay any part of the principal or interest when due on this Note . . . shall be a material default," resulting in the full amounts "immediately becom[ing] due and payable without notice, at the option of the Bank." (*Id.*)(internal citation omitted.) Furthermore, each Note stipulates that from "'time to time the maturity date of this Note **may** be extended, or this Note **may** be renewed in whole or in part,' but that 'no such occurrence shall in any manner affect, limit, modify, or otherwise impair any rights' of BB&T." (*Id.*)(citing Document 1-1 at 3)(emphasis in original.)

On April 5, 2012, the Defendants executed a Loan Agreement "which applies to all indebtedness Defendants incur to [Branch Banking and Trust]." (*Id.*) "The Loan Agreement provides that the 'failure to make prompt payment of any installment of principal or interest on any of the Note(s) when due or payable' is an event of default, permitting BB&T to exercise any remedy available to it under applicable law." (*Id.*) (internal citation omitted.) The Loan Agreement incorporates by reference the terms of the Notes executed by TTC.

On September 12, 2014, the Plaintiff filed a *Verified Complaint* (Document 1) in this Court. The verified complaint has seven counts for breach of contract, each relating to a particular Note. Specifically, Count I claims breach of contract as to Note 15, Count II claims breach of contract as to Note 26, Count III claims breach of contract as to Note 27, Count IV asserts breach of contract as to Note 28, Count V claims breach of contract as to Note 29, Count VI asserts the same as to Note 30, and Count VII claims breach of contract as to Note 31. (*See* Document 1 at 20-25.) The Plaintiff prays for "the balance due and owing BB&T under the terms of Notes 15, 26, 27, 28, 29, 30 and 31," "pre-judgment interest at the statutory rate,"

2

"post-judgment interest at the statutory rate," and "costs and expenses, including but not limited to attorneys' fees incurred in connection with this action, and such other further relief against Defendants as the Court may deem appropriate."   (Document 1 at 25-26.)

On October 28, 2014, the Defendants filed an *Answer, Affirmative Defenses and Counterclaim* (Document 12).   The Defendants' counterclaim asserts one count for "Breach of Contract/Breach of the Duty of Good Faith and Fair Dealing" (Count I) because BB&T (i) failed "to renew Note 15 and 27," (ii) failed "to, at a minimum, extend the maturity date of Note 15 and Note 27," (iii) "improperly transferr[ed] TTC's loan portfolio to the Asset Group," and (iv) failed "to engage in meaningful workout negotiations despite TTC's unblemished payment record and aggressive efforts." (Document 12 at 31-32.)   The Counterclaimants pray for compensatory damages, consequential damages, punitive damages, prejudgment interest, and attorney fees "as well as all additional relief that the Court deems just and proper."   (*Id.* at 32.)

On November 18, 2014, BB&T filed its motion to dismiss the Defendants' counterclaim together with its memorandum in support.   On December 2, 2014, the Defendants filed a response and memorandum in opposition.   Lastly, on December 5, 2014, BB&T filed its reply.   The matter is ripe for the Court's consideration.

## II.    APPLICABLE LAW

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint.   *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009); *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008).   "[T]he legal sufficiency of a complaint is measured by whether it meets the standard stated in Rule 8 [of the Federal Rules of Civil Procedure] (providing general rules of pleading) . . . and Rule 12(b)(6) (requiring that a

3

complaint state a claim upon which relief can be granted.)"   *Id.*   Federal Rule of Civil Procedure 8(a)(2) requires that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."   Fed. R. Civ. P. 8(a)(2).

In reviewing a motion to dismiss under Rule 12(b)(6) for failure to state a claim, the Court must "accept as true all of the factual allegations contained in the complaint."   *Erikson v. Pardus*, 551 U.S. 89, 93 (2007).   The Court must also "draw[ ] all reasonable factual inferences from those facts in the plaintiff's favor."   *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). However, statements of bare legal conclusions "are not entitled to the assumption of truth" and are insufficient to state a claim.   *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009).   Furthermore, the Court need not "accept as true unwarranted inferences, unreasonable conclusions, or arguments."   *E. Shore Mkts., v. J.D. Assocs. Ltd. P'ship,* 213 F.3d 175, 180 (4th Cir. 2000).   "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice… [because courts] 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"   *Iqbal,* 556 U.S. at 678 (quoting *Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007)).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'"   *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 570.)   In other words, this "plausibility standard requires a plaintiff to demonstrate more than 'a sheer possibility that a defendant has acted unlawfully.'" *Francis v. Giacomelli,* 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Twombly,* 550 U.S. at 570.)   In the complaint, a plaintiff must "articulate facts, when accepted as true, that 'show' that the plaintiff has stated a claim entitling him to relief."   *Francis,* 588 F.3d at 193 (quoting *Twombly,* 550 U.S.

4

at 557.)   "Determining whether a complaint states [on its face] a plausible claim for relief [which can survive a motion to dismiss] will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."   *Iqbal,* 556 U.S. at 679.

## III.   DISCUSSION

As an initial matter, the Court notes that jurisdiction is proper pursuant to 28 U.S.C. § 1332 as there is complete diversity among the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.   The Court notes that "BB&T is a North Carolina banking corporation authorized to do business in the State of West Virginia," while "TTC is a West Virginia corporation with its principal place of business in Raleigh County, West Virginia," and further, "Mr. Ison . . . resides in Raleigh County, West Virginia," while "Mr. Connolly . . . resides in Beaufort County, South Carolina."   (Document 1 at 1.)   The Court further notes that the Defendants agreed with the above information via ¶¶ 1-5 of the *Answer, Affirmative Defenses and Counterclaim* (Document 12).

The Plaintiff argues that dismissal of the Defendants' counterclaim is appropriate because "the implied covenant of good faith and fair dealing 'cannot give contracting parties rights which are inconsistent with those set out in the contract.'"   (Document 15 at 1)(citing *Barn-Chestnut, Inc. v. CFM Development Corp.,*457 S.E.2d 502, 509 (W. Va. 1995)).   Put plainly, the Plaintiff maintains that the Defendants seek relief that is inconsistent with the express terms of their applicable contracts with BB&T.   BB&T stresses that the express terms of the contract permit it to exercise its options of (i) renewing, (ii) modifying, or (iii) declaring the loan in default and demanding the loan be immediately due and payable.   (Document 15 at 4.)   Furthermore, "BB&T's course of conduct is and was consistent with the express terms of the Notes and Loan

Agreement." (*Id.* at 5.)  BB&T argues that the Defendants' claims that it acted "wrongful" is moot because "[t]he bases for this action and BB&T's acceleration of Defendants' notes is Defendants' breach of contract by the defaults outlined in the *Verified Complaint*." (*Id.*)(internal reference omitted.)

The Defendants oppose dismissal of the counterclaim, stating "that the terms of the Parties' agreement were modified by the Parties' course of conduct.  Specifically, the terms of the notes regarding extension and renewal were modified by BB&T's automatic renewal of the notes throughout the Parties' course of dealing." (Document 26 at 3.)  The Defendants argue that "[e]ven in a situation where an express term controls, course of performance may be used to show modification of that term if it is inconsistent with the parties' course of dealing." (*Id.*)  In other words, the Defendants argue that since BB&T automatically renewed notes in the past, they had a reasonable expectation that BB&T would renew the notes in the future.  The Defendants also "request that they be given the opportunity to amend their Counterclaim" if the Court "feels inclined to grant BB&T's Motion." (*Id.* at 5.)

The Plaintiff replies that the parties' express contractual terms govern the instant dispute, and emphasizes that it had the discretion under the contract terms to extend, renew, or decline to do either and hold the outstanding amount immediately due and payable. (Document 27 at 1-2.)  Thus, it argues that "BB&T could not have breached the implied duty of good faith and fair dealing because it acted consistently with its rights under the Notes." (*Id.* at 2.)  BB&T maintains that the Defendants' request for a chance to amend should be denied because "[g]iven that there is no legal basis for relief via the implied duty of good faith and fair dealing regarding the issue of

renewal of promissory notes, there cannot be a set of facts that would support Defendants' Counterclaim."   (*Id.* at 3.)

The Court finds that BB&T acted consistently with the express terms of the contract. "The implied covenant of good faith and fair dealing cannot give contracting parties rights which are inconsistent with those set out in the contract."   *Barn-Chestnut, Inc. v. CFM Dev. Corp.*, 457 S.E.2d 502, 509 (W. Va. 1995).   The plain, unambiguous terms of the relevant documents reveal that BB&T had the discretion whether to extend or renew the maturity date of any loan, but that if it had chosen one or more of those options at any point in the past, "no such occurrence [would] in any manner affect, limit, modify, or otherwise impair any rights."   Specifically, per the terms of the parties' agreements, prior modification of a Note by BB&T could not result in the Defendants' "reasonable expectation and good faith belief" that any Note would automatically be renewed in the future. To hold otherwise would render relevant language in the pertinent documents meaningless, and would strip BB&T of the very discretion for which it expressly contracted.

BB&T had the ultimate discretion of how to proceed in the case of a default, and with respect to the Notes at issue here, BB&T chose to treat them as being in default, resulting in the full amounts being immediately due and payable.   The Defendants argue that it was bad faith for BB&T, without notice, not to renew the Notes, but again, the plainly worded agreements indicate that upon default, the full amounts "shall immediately become due and payable <u>without notice, at the option of the Bank</u>."   (Document 15 at 2) (emphasis added.)   BB&T acted in accordance with the language found in the Loan Agreement and Promissory Notes.   Per the applicable language, BB&T's decision to modify or extend Notes in the past did not give TTC a *reasonable* expectation that BB&T would do so in the future.

7

Finally, although TTC in its response in opposition includes a sentence relevant to amending the counterclaim, no motion to amend was properly filed.

## IV.    CONCLUSION

Wherefore, for the reasons and findings articulated herein, the Court hereby **ORDERS** that the *Plaintiff Branch Banking and Trust Company's Motion to Dismiss Defendants' Counterclaim* (Document 14) be **GRANTED** and that the Defendants' Counterclaim be **DISMISSED WITH PREJUDICE**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER:        January 29, 2015

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA

8