IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

BRANCH BANKING AND TRUST COMPANY,

        Plaintiff,

v.                                          CIVIL ACTION NO.   5:14-cv-25740

THE TRACTOR COMPANY, INC., et al.,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed *Plaintiff Branch Banking and Trust Company's Motion for Summary Judgment Against Defendants* (Document 45), the *Memorandum of Law in Support of Plaintiff Branch Banking and Trust Company's Motion for Summary Judgment Against Defendants* (Document 46), the *Response to Banking and Trust Company's Motion for Summary Judgment* (Document 49) filed by the Defendants on October 14, 2015, *Plaintiff Branch Banking and Trust Company's Reply in Support of Plaintiff Branch Banking and Trust Company's Motion for Summary Judgment against Defendants* (Document 51), and all accompanying exhibits.  For the reasons stated herein, the Court finds that the Plaintiff's motion should be granted.

**PROCEDURAL HISTORY**

The procedural history of this civil action is somewhat unique.  The Plaintiff, Branch Banking and Trust Company (BB&T), a citizen of North Carolina, initiated this action with the filing of a *Complaint* (Document 1) on September 12, 2014.  Therein, BB&T asserted claims for breach of contract under West Virginia law against the Defendants, The Tractor Company, Inc.

(TTC), a West Virginia corporation, Joe D. Ison (Mr. Ison), a citizen of West Virginia, and William Connolly (Mr. Connolly), a citizen of West Virginia. BB&T alleged that TTC defaulted on several promissory notes, and that Mr. Ison and Mr. Connolly defaulted on several guaranty agreements, wherein each agreed to ensure the prompt payments of all debts incurred by TTC. BB&T sought to recover actual and compensatory damages, together with costs and expenses, including attorney's fees and court costs.

On October 28, 2014, TTC, Mr. Ison, and Mr. Connolly collectively filed their *Answer, Affirmative Defenses, and Counterclaim* (Document 12). On January 29, 2015, the Court issued a *Memorandum Opinion and Order* (Document 32) dismissing the counterclaim with prejudice. On September 29, 2015, after the close of discovery, BB&T filed the present motion for summary judgment. The Defendants responded on October 14, 2015, and BB&T filed its reply on October 20, 2015.

After the motion for summary judgment was fully briefed, TTC filed its *Suggestion of Bankruptcy* (Document 52), wherein TTC provided notice to the Court of its filing of Chapter 11 bankruptcy in the United States Bankruptcy Court for the Western District of Pennsylvania. In response to this filing, the Court ordered the parties to file positions regarding the necessity of a stay of all claims in this case based on TTC's bankruptcy filing. BB&T submitted their filing with the Court on November 3, 2015. On November 17, 2015, the Defendants notified the Court that this case had been removed to the United States Bankruptcy Court for the Western District of Pennsylvania. The Court, therefore, stayed all proceedings in this case, pending a motion to remand filed by BB&T in that court. On April 5, 2016, BB&T notified the Court that the Bankruptcy Court had remanded the case to this Court. On May 2, 2016, the Court entered its

2

*First Amended Scheduling Order* (Document 60), wherein it stayed all claims against TTC, but allowed claims against Mr. Ison and Mr. Connolly to proceed. BB&T's motion for summary judgment on its claim for breach of contract is ripe for review.

## FACTUAL BACKGROUND

The following facts in this case are undisputed. Between May 31, 2011, and February 25, 2014, TTC signed a number of promissory notes with BB&T. During the same time period, Mr. Ison and Mr. Connolly signed a number of guaranty agreements with BB&T, in which they agreed to guarantee TTC's payment of the promissory notes. TTC subsequently defaulted on each of the notes, and Mr. Ison and Mr. Connolly failed to honor the guaranty agreements. The Court will review each of the applicable agreements.

    A. *Note 15*

On May 31, 2011, TTC executed a promissory note (Note 15) for $448,000.00, wherein TTC promised to pay BB&T quarterly payments of accrued interest beginning on July 6, 2011, with a final payment of all remaining interest and principal on July 8, 2014. To secure Note 15, Mr. Ison executed a Guaranty Agreement with BB&T on May 31, 2011, wherein he unconditionally guaranteed the payment to BB&T of all notes, drafts, debts, obligations, and liabilities of TTC, with interest, when the debts became due. Mr. Connolly executed a similar agreement on May 10, 2011, wherein Mr. Connolly made similar guarantees to BB&T. Note 15 matured on June 8, 2014. The Defendants failed to pay the remaining principal and interest, and have yet to do so.

    B. *Note 26*

On May 31, 2013, TTC executed a promissory note (Note 26) for $550,000.00, wherein

3

TTC promised to pay BB&T sixty-five consecutive payments of $9,263.30, starting on July 15, 2013. To secure Note 26, TTC executed a Security Agreement, dated May 31, 2013, granting BB&T a secured interest in certain collateral, including a Caterpillar 2008 Motor Grader (the "Caterpillar") in the possession of TTC. Mr. Ison also executed a Guaranty Agreement for Note 26, wherein he guaranteed the prompt payment of all obligations of TTC under Note 26. Mr. Connolly executed an agreement on May 31, 2013, wherein Mr. Connolly made similar guarantees to BB&T. TTC, to date, is delinquent on its payments on Note 26. Further, Note 26 indicated that failure to pay "any part of the principal or interest … on any other liability to the Bank by any one or more of the undersigned" constituted a material default. Therefore, TTC's failure to make payments on Note 15 also constituted a default on the terms of Note 26. TTC also failed to provide financial statements required under the terms of Note 26. Finally, after selling the Caterpillar, TTC failed to obtain routine creditor information from the buyer. BB&T considered this a breach of Section 3.04 of the Loan Agreement, "Conduct of Business," which required TTC to "[c]ontinue to engage in an efficient, prudent, and economical manner in a business of the same general type as now conducted." (Loan Agreement, att'd as Ex. 36 to Pl.'s Complaint, at 3.) Based on these defaults, BB&T accelerated the amount due under Note 26 on July 16, 2014.

    C. Note 27

On June 26, 2013, TTC executed a promissory note for a principal amount of $257,731.05 ("Note 27"), which required TTC to pay BB&T quarterly payments of accrued interest beginning on September 24, 2013, with a final payment due of all remaining interest and principal on June 24, 2014. Mr. Ison executed a Guaranty Agreement on Note 27 on June 26, 2013, wherein he absolutely and unconditionally guaranteed the payment of all debts, obligations, and liabilities,

4

both primary and secondary, of TTC when such debts became due. Mr. Connolly also executed a Guaranty Agreement on Note 27 on June 26, 2013. In this agreement, Mr. Connolly absolutely and unconditionally guaranteed the payment of all notes, drafts, obligations, and liabilities of TTC to BB&T, together with interest.

Note 27 matured on June 24, 2014, and neither TTC nor the Defendants paid the remaining principal or interest, and have not done so to date. As of September 25, 2015, the balance due on Note 27 was $285,045.88, including principal and accrued but unpaid interest.

*D. Note 28*

On January 22, 2014, TTC executed a promissory note for a principal amount of $673,048.02 ("Note 28"), which required TTC to make quarterly payments of accrued interest beginning on April 22, 2014, with a final payment of all remaining interest and the principal on January 22, 2015. Mr. Ison executed a Guaranty Agreement on Note 28 on January 22, 2014, wherein he absolutely and unconditionally guaranteed the payment of all debts, obligations, and liabilities, both primary and secondary, of TTC when such debts became due and payable. Mr. Connolly also executed a Guaranty Agreement on Note 28 on January 22, 2014. In this agreement, Mr. Connolly absolutely and unconditionally guaranteed the payment of all notes, drafts, debts, obligations, and liabilities of TTC to BB&T, together with interest.

TTC failed to pay the principal and interest required under Note 28 when it matured on January 22, 2015. TTC also defaulted under Note 28 by failing to make full and timely payments under Note 26, and by failing to pay the outstanding and accrued interest due on Note 15 and Note 27 by their respective maturity dates. TTC also breached Note 28 by failing to provide financial statements due to BB&T on April 30, 2014, pursuant to section 3.08 of the Loan Agreement.

5

BB&T also argues that the failure of TTC to obtain creditor information from the buyer of the Caterpillar constitutes a breach of Note 28, pursuant to section 3.04 of the Loan Agreement. As a result of these defaults, BB&T accelerated the amounts due under Note 28 on July 16, 2014, making the full amount of principal and accrued interest due and payable immediately.

 *E. Note 29*

TTC executed an additional promissory note on January 22, 2014 (Note 29) in the original principal amount of $640,889.00. Note 29 required TTC to pay BB&T quarterly payments of accrued interest beginning on April 22, 2014, with a final payment of all accrued interest and principal on January 22, 2015. Mr. Ison and Mr. Connolly each signed separate guaranty agreements for Note 29 on January 22, 2014, wherein each agreed to guarantee payment to BB&T of all debts, obligations, and liabilities, primary and secondary, of TTC at any time, together with interest, when such obligations became due.

Note 29 matured on January 22, 2015. TTC failed to pay the remaining principal and balance. However, BB&T had previously accelerated the amounts due under Note 29 based on the failure of TTC to honor obligations under Notes 15, 26, and 27. BB&T also considered TTC in default based on TTC's failure to provide financial statements to BB&T on April 30, 2014, in accordance with section 3.08 of the Loan Agreement, and TTC's failure to obtain creditor information from the buyer of the Caterpillar.

 *F. Note 30*

On February 25, 2014, TTC executed a promissory note to BB&T in the amount of $157,000.00. Note 30 required TTC to pay BB&T quarterly payments of accrued interest beginning on May 24, 2014, and final payment of principal and accrued interest was due on

6

February 24, 2015. Both Mr. Ison and Mr. Connolly executed separate guaranty agreements on February 25, 2014, wherein they each agreed to unconditionally guarantee the payment of all notes, drafts, debts, obligations, and liabilities of TTC to BB&T, together with interest.

Note 30 matured on February 24, 2015, and TTC failed to pay the remaining principal and interest. However, as in other notes, BB&T had already accelerated the amounts due under Note 30 on July 16, 2014, based on TTC's failure to comply with the terms of Notes 15, 26, and 27. BB&T also considered TTC in default on Note 30 for failing to provide financial statements to BB&T on April 30, 2014, in compliance with section 3.08 of the Loan Agreement, and failing to obtain routine creditor information from the buyer of the Caterpillar.

G.  *Note 31*

On February 25, 2014, TTC executed a promissory note in the amount of $158,450.00. Under Note 31, TTC promised to pay BB&T quarterly payments of accrued interest beginning on May 24, 2014, with a final payment of all remaining interest and the principal on February 24, 2015. On February 25, 2014, Mr. Ison and Mr. Connolly each signed separate guaranty agreements with BB&T, wherein they agreed to unconditionally guarantee the payment of all notes, drafts, debts, obligations, and liabilities of TTC to BB&T.

Note 31 matured on February 24, 2015. TTC failed to pay the remaining principal and interest. However, BB&T had previously accelerated Note 31, based on TTC's failure to make full and timely payments on Notes 15, 26, and 27 by their respective maturity dates. BB&T also considered TTC in default on Note 31 for failing to provide financial statements to BB&T on April 30, 2014, in accordance with section 3.08 of the Loan Agreement, and for failing to obtain routine creditor information from the buyer of the Caterpillar.

*G. The Disputed Facts*

The parties do not dispute the validity of any of these notes, or any of the guaranty agreements. Also, the parties do not dispute that the notes constituted valid contracts, that TTC defaulted on the notes, and that Mr. Ison and Mr. Connolly have breached the terms of the guaranty agreements. Rather, the parties dispute the amount owed. BB&T asserts that TTC, Mr. Ison, and Mr. Connolly are liable for a sum certain of:

> $2,801,189.17, plus (1) interest accruing at a rate of the Bank's Prime Rate plus 5% per annum, from September 26, 2015, until the date of this Court's judgment; (2) post-judgment interest at the statutory rate from the date of this Court's Judgment until satisfaction of that judgment; (3) attorneys' fees and costs accruing on or after September 26, 2015; and (4) court costs.

(Pl.'s Mem. in Supp. of Mot. for Summ. J., at 2.) Meanwhile, the Defendants collectively argue that BB&T has inaccurately calculated the amount owed. (See Def.'s Response, at 1-2.)

**STANDARD OF REVIEW**

The well-established standard in consideration of a motion for summary judgment is that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a)–(c); *see also Hunt v. Cromartie*, 526 U.S. 541, 549 (1999); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Hoschar v. Appalachian Power Co.*, 739 F.3d 163, 169 (4th Cir. 2014). A "material fact" is a fact that could affect the outcome of the case. *Anderson*, 477 U.S. at 248; *News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010). A "genuine issue" concerning a material fact exists when the evidence is sufficient to allow a reasonable jury to return a verdict in the non-moving party's favor. *FDIC v. Cashion*, 720 F.3d 169, 180 (4th Cir. 2013); *News &*

8

*Observer*, 597 F.3d at 576.

The moving party bears the burden of showing that there is no genuine issue of material fact, and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp.*, 477 U.S. at 322–23. When determining whether summary judgment is appropriate, a court must view all of the factual evidence, and any reasonable inferences to be drawn therefrom, in the light most favorable to the non-moving party. *Hoschar*, 739 F.3d at 169. However, the non-moving party must offer some "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson*, 477 U.S. at 256. "At the summary judgment stage, the non-moving party must come forward with more than 'mere speculation or the building of one inference upon another' to resist dismissal of the action." *Perry v. Kappos*, No.11-1476, 2012 WL 2130908, at *3 (4th Cir. June 13, 2012) (unpublished decision) (quoting *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985)).

In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter," *Anderson*, 477 U.S. at 249, nor will it make determinations of credibility. *N. Am. Precast, Inc. v. Gen. Cas. Co. of Wis.*, 2008 WL 906334, *3 (S.D. W. Va. Mar. 31, 2008) (Copenhaver, J.) (citing *Sosebee v. Murphy,* 797 F.2d 179, 182 (4th Cir. 1986). If disputes over a material fact exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," summary judgment is inappropriate. *Anderson*, 477 U.S. at 250. If, however, the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case," then summary judgment should be granted because "a complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322–23.

9

**DISCUSSION**

Because the Court has previously stayed all claims against TTC, the sole issue before the Court is whether Mr. Ison and Mr. Connolly breached the guaranty agreements that each executed for Notes 15, 26, 27, 28, 29, 30, and 31.  Under West Virginia law, a claim for breach of contract requires "proof of the formation of a contract, a breach of the terms of that contract, and resulting damages."  *Sneberger v. Morrison*, 776 S.E.2d 156, 171 (W.Va. 2015), citing Syl. Pt. 1, *State ex rel. Thornhill Group, Inc. v. King*, 759 S.E.2d 795 (2014).   The facts in this case demonstrate, and the parties do not contest, that Mr. Ison and Mr. Connolly accepted the terms of the guaranty agreements, and that the purpose of the guaranty agreements was to allow BB&T to recover the balance and interest on Notes 15, 26, 27, 28, 29, 30, and 31 from Mr. Ison and Mr. Connolly if TTC failed to honor the terms of the notes.  There is therefore no question of material fact as to whether the guaranty agreements were valid contractual instruments under West Virginia law. The facts in this case also clearly demonstrate that as of the date this motion was filed, TTC had failed to satisfy the terms of the notes, and that Mr. Ison and Mr. Connolly have failed to honor their obligations under the guaranty agreements.  Mr. Ison and Mr. Connolly offer no evidence which contradicts this conclusion.  Therefore, without making any finding as to BB&T's claims against TTC, the Court finds that there is no genuine issue of material fact as to whether Mr. Ison and Mr. Connolly breached their respective guaranty agreements with BB&T.

Regarding the issue of damages, the parties do not dispute that BB&T has been damaged by the failure of Mr. Ison and Mr. Connolly to honor the guaranty agreements.  Rather, the parties dispute the amount of damages to which BB&T is entitled.  In the present motion, BB&T asserts that the balance due and owing under the various notes is $2,753,644.48, including unpaid

principal, unpaid interest, and late fees, and also asserts a claim for attorneys' fees. (Pl.'s Mem. in Supp. of Mot. for Summ. J., at 21.) The Defendants, by contrast, deny "that BB&T's calculation of the alleged amount due under the notes is accurate." (Def.'s Response, at 1.) In support, the Defendants rely upon the Affidavit of Mr. Connolly, wherein Mr. Connolly states that he does not "know how [BB&T] came up with" its claimed damages. (Affidavit of William Connolly, at 1-2, att'd as Ex. A to Def.'s Response.) The Defendants argue that this dispute of fact is sufficient to preclude summary judgment. The Defendants are incorrect. The Plaintiff, BB&T, has submitted exhibits in support of its calculation of damages. Mere disagreement with the amount of damages set forth by the Plaintiff and a statement indicating a lack of knowledge regarding BB&T's calculation, without more, is insufficient to preclude summary judgment, as it simply does not create a genuine issue of *material fact* requiring submission to a jury.

## CONCLUSION

Wherefore, after careful consideration, the Court **ORDERS** that *Plaintiff Branch Banking and Trust Company's Motion for Summary Judgment Against Defendants* (Document 45) be **GRANTED** as to the Plaintiff's claims for breach of contract against Defendants Joe D. Ison and William Connolly.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

      ENTER:     July 7, 2016

*[signature]*
IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA